`Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR TX. C. C., INC., ET AL.,
DEBTORS AND DEBTORS IN POSSESSION

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 17-40297 |
| TX. C. C., INC., et al. | § | (Chapter 11) |
| | § | Jointly administered. |
| Debtors. | § | |

**APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §§105 AND 363 AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFF MERRITT AND MERRITT ADVISORS AS RESTRUCTURING ADVISORS FOR THE DEBTORS NUNC PRO TUNC**

---

**NOTICE PURSUANT TO LOCAL RULES
OF BANKRUPTCY PROCEDURE 2014 AND 9007.**

**NO HEARING WILL BE CONDUCTED ON THIS MOTION/OBJECTION/ APPLICATION UNLESS A WRITTEN OBJECTION IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AND SERVED UPON THE PARTY FILING THIS PLEADING WITHIN _TWENTY-ONE (21) DAYS_ FROM DATE OF SERVICE UNLESS THE COURT SHORTENS OR EXTENDS THE TIME FOR FILING SUCH OBJECTION. IF NO OBJECTION IS TIMELY SERVED AND FILED, THIS PLEADING SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT. IF AN OBJECTION IS FILED AND SERVED IN A TIMELY MANNER, THE COURT WILL THEREAFTER SET A HEARING. IF YOU FAIL TO APPEAR AT THE HEARING, YOUR OBJECTION MAY BE STRICKEN. THE COURT RESERVES THE RIGHT TO SET A HEARING ON ANY MATTER.**

---

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

TX. C.C., INC. and the related debtors and debtors in possession[1] (collectively, the "Debtors"), submit this Application, pursuant to 11 U.S.C. §§ 105 and 363(b), seeking entry of an order authorizing the employment of Jeff Merritt and Merritt Advisors (together "Merritt Advisors") as the restructuring advisors for the Debtors in these Chapter 11 reorganization cases *nunc pro tunc* and effective as of March 6, 2017 (the "Application"). In support of this Application, the Debtors submit the *Declaration of Jeff Merritt*, the principal of Merritt Advisors (the "Merritt Declaration"), attached hereto as **Exhibit 1**.[2]

### I. Jurisdiction and Venue

1. This Court has jurisdiction to consider this application under the provisions of 28 U.S.C. §§ 1334 and 157. This matter involves the administration of a bankruptcy estate and, thus, is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue of this proceeding is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

### II. Introduction

2. The Debtors each filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §101 et seq. (the "Code") on the dates indicated below, thereby initiating the respective bankruptcy cases and creating their respective bankruptcy estates.

---

[1] The debtors in these Chapter 11 cases (each a "Debtor" and collectively, the "Debtors") are TX. C. C., Inc. (Case No. 17-40297), Texas Land & Cattle of Fairview, LLC (Case No. 17-40300), Lone Star Steakhouse & Saloon of Springfield, Inc. (Case No. 17-40303), Lone Star Steaks, Inc. Case No. 17-40330), Texas Land & Cattle Steakhouse of North Carolina (Case No. 17-40332), TXLC of Arlington II, LLC (Case No. 17-40333), Lone Star Steakhouse & Saloon of Southern Missouri (Case No. 17-40334), Lone Star Steakhouse & Saloon of Florida, Inc. (Case No. 17-40335), TXLC of Missouri, Inc. (Case No. 17-40336), Lone Star Steakhouse & Saloon of Michigan, Inc. (Case No. 17-40339), Lone Star Steakhouse & Saloon of Mississippi, Inc. (Case No. 17-40340), Lone Star Steakhouse & Saloon of Oklahoma, Inc. (Case No. 17-40341), Lone Star Steakhouse & Saloon of Ohio, Inc. (Case No. 17-40342), Texas LC Liquor Company (Case No. 17-40443), and LS Management, Inc. (Case No. 17-40508).

[2] All exhibits are incorporated by reference herein as if fully set forth verbatim. Fed. R. Civ. P. 10(c).

| Debtor | Case No. | Petition Date |
|---|---|---|
| TX. C. C., Inc. | 17-40297 | 2/13/2017 |
| Texas Land & Cattle of Fairview, LLC | 17-40300 | 2/13/2017 |
| Lone Star Steakhouse & Saloon of Springfield, Inc. | 17-40303 | 2/13/2017 |
| Lone Star Steaks, Inc | 17-40330 | 2/17/2017 |
| Texas Land & Cattle Steakhouse of North Carolina, Inc. | 17-40332 | 2/18/2017 |
| TXLC of Arlington II, LLC | 17-40333 | 2/18/2017 |
| Lone Star Steakhouse & Saloon of Southern Missouri | 17-40334 | 2/19/2017 |
| Lone Star Steakhouse & Saloon of Florida, Inc. | 17-40335 | 2/19/2017 |
| TXLC of Missouri, Inc. | 17-40336 | 2/19/2017 |
| Lone Star Steakhouse & Saloon of Michigan, Inc. | 17-40339 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Mississippi, Inc. | 17-40340 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Oklahoma, Inc. | 17-40341 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Ohio, Inc. | 17-40342 | 2/21/2017 |
| TX LC Liquor Company | 17-40443 | 3/3/2017 |
| LS Management, Inc. | 17-40508 | 3/8/2017 |

3. The Debtors are operating as debtors-in-possession pursuant to 11 U.S.C. §§ 1107 and 1108.

4. No trustee, examiner, or statutory creditors' committee has been appointed in these Chapter 11 cases.

5. The Debtors own and operate two steakhouse dining concepts, Texas Land & Cattle and Lone Star Steakhouse & Saloon.

6. As of the filing of this Motion, the Debtors currently operate a total of twenty-nine (29) locations across the two brands.

### III.  Relief Requested

7. Subject to approval of this Court, the Debtors have employed Merritt Advisors[3] effective as of March 6, 2017 as restructuring advisor for the Debtors in connection with the prosecution of these cases under Chapter 11. Pursuant to Code §§ 105(a) and 363(b), the

---

[3] Merritt Advisors is a sole proprietorship of Jeff Merritt.

**APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §§105 AND 363 AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFF MERRITT AND MERRITT ADVISORS AS RESTRUCTURING ADVISORS FOR THE DEBTORS NUNC PRO TUNC – Page 3 of 12**   1313487.DOCX[1]

Debtors request that the Court approve the employment of Merritt Advisors to perform the restructuring services for the Debtors in these Chapter 11 cases.

8. A proposed form of order is submitted with this Application and is incorporated by reference herein.

### IV. Qualifications of Merritt Advisors

9. The Debtors seek the entry of an order authorizing the Debtors to employ and retain Merritt Advisors as their restructuring advisor, to assist the Debtors in operating on a day-to-day basis as well as in evaluating and implementing strategic and tactical options related to the Debtors' business operations and managing the Debtors' restructuring process, including potentially the sale of assets, as may be required.

10. Merritt Advisors is a business advisory firm with substantial expertise in restructurings, crisis management, and business reorganization. Merritt Advisors is well-qualified to provide the Debtors restructuring advisory services in connection with these Chapter 11 cases. Merritt Advisors, and particularly Mr. Merritt, have advised on a wide variety of engagements including restructuring, turnarounds, acquisitions, and the sale of assets and divisions/subsidiaries. The Debtors have selected Mr. Merritt because of his experience and reputation for providing restructuring advisory services.

11. Merritt Advisors commenced the engagement with the Debtors on March 6, 2017 concurrent with the execution and delivery of the engagement agreement (the "Engagement Agreement"), attached hereto as **Exhibit 2**. Since that time, Mr. Merritt has acquired significant knowledge of the Debtors and their businesses and is now knowledgeable of the Debtors' financial affairs, debt structure, operations, and related matters. Mr. Merritt has worked closely with the Debtors' management and other professionals in assisting the Debtors' with their

businesses and the myriad requirements of this Chapter 11 case. Consequently, the Debtors believe that Merritt Advisors quickly has developed significant relevant experience and expertise regarding the Debtors, their operations, and the unique circumstances of these cases. For these reasons, Merritt Advisors is both well qualified and uniquely suited to deal effectively and efficiently with matters that may arise in the context of this case. Accordingly, the Debtors submit that the retention of Merritt Advisors on the terms and conditions set forth in the Engagement Agreement and otherwise herein are necessary and appropriate, in the best interests of the Debtors' estates, creditors, and all other parties in interest, and should be granted in all respects.

## V. Services to be Provided by Merritt Advisors

12. The services of Merritt Advisors are necessary to enable the Debtors to execute faithfully their duties as debtors in possession and to develop, propose, and confirm a plan of reorganization or other appropriate exit from Chapter 11.

13. As described in the Engagement Agreement, the Debtors seek to retain Merritt Advisors to assist and advise the Debtors with the analysis and evaluation of the Debtors' financial position, financial history, operations, competitive environment, and assets in order to assist the Debtors in determining the best means to implement the most appropriate strategy, including a restructuring, refinancing, and/or sale of the Debtors' assets.

14. Specifically, Merritt Advisors will perform *inter alia* the following services:

   a. Merritt Advisors will begin the engagement by assisting Company management in putting together and coordinating preparations of bankruptcy schedules and the statement of financial affairs for each entity.

   b. Merritt Advisors will assist with preparation of information for bankruptcy counsel and bankruptcy meetings and hearings. Merritt Advisors shall also be available to attend meetings and hearings.

    c.    Merritt Advisors will perform an assessment of the business to determine the financial viability of the Debtors including financial and cash flow projections and in the process assist in the identification and implementation of cost reduction and balance sheet cleanup.

    d.    Merritt Advisors will be working with the officers of the Debtors and any outside advisors, to develop possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Debtors and in the process, develop a plan of reorganization. The plan of reorganization may include the possible sale of the Debtors or some or all of its assets. If it is determined a sale is the best alternative, Merritt Advisors will run the sale process.

    e.    Merritt Advisors shall perform such other services as requested or directed by the management of the Debtors.

15. The services that will be rendered by Merritt Advisors and Mr. Merritt are not duplicative with the services to be performed by any other individual or entity internally employed by the Debtors or otherwise externally retained by the Debtors.

## VI. Compensation

16. Merritt Advisors is accepting the retention conditioned upon the Debtors' agreement to provide compensation as decribed below and to reimburse for the out-of-pocket expenses incurred in accordance with their customary billing practices, as set forth in the Engagement Agreement (the "Fee and Expense Structure") as follows:

    (a)    Mr. Merritt will be paid for his services an hourly rate of $375.00.

    (b)    Any other professionals utilized by Merritt Advisors would be paid at the same or lesser rate.

    (c)    Merritt Advisors will be reimbursed by the Debtors for the reasonable out-of pocket expenses Mr. Merritt and any other personnel of Merritt Advisors incurred in connection with the assignment, such as travel, lodging, duplications, computer research, and messenger and telephone charges.

17. Merritt Advisors will invoice the Debtors every month for the hours of work performed and for the reimbursement of any expenses. Payment of each invoice is due within ten (10) business days.

18. Merritt Advisors received a $50,000 retainer from Day Star Capital Management, LLC on March 6, 2017 as an "evergreen retainer" or security deposit which retainer may be accessed if and when the Debtors fail to pay any monthly invoice within ten (10) days of the receipt of the invoice.

19. To the best of the Debtors' knowledge, and based on the Merritt Declaration, there are no arrangements between Merritt Advisors and any other entity to share compensation received or to be received in connection with this case, other than as permitted by Code § 504.

## VII. Indemnification

20. As a material part of the consideration for which Merritt Advisors have agreed to provide the services described herein, pursuant to the Engagement Agreement, the Debtors have agreed to indemnify and hold harmless Mr. Merritt, Merritt Advisors, and its employees (collectively, the "Indemnified Parties") against any and all losses, claims, damages, expenses or liabilities whatsoever, joint or several, which may arise out of or in connection with the performance of this agreement, or the performance of Merritt Advisors. The indemnification and hold harmless agreement shall not apply to any intentionally wrongful acts of Mr. Merritt or Merritt Advisors or the gross negligence of Mr. Merritt or Merritt Advisors, or its employees. Mr. Merritt shall be covered as an officer under the Debtors' existing director and officer liability insurance policy or equivalent policy, if any, acceptable to Merritt Advisors. The termination of the agreement or the engagement shall not affect the indemnification, which shall survive termination.

**APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §§105 AND 363 AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFF MERRITT AND MERRITT ADVISORS AS RESTRUCTURING ADVISORS FOR THE DEBTORS NUNC PRO TUNC – Page 7 of 12** 1313487.DOCX[1]

21. The Debtors believe the indemnity provisions are a reasonable term and condition of the Engagement Agreement and were, along with all terms of the Engagement Agreement, negotiated by the Debtors and Merritt Advisors at arms'-length and in good faith. Merritt Advisors and the Debtors believe that the indemnity provisions are comparable to those indemnification provisions generally obtained by crisis management and/or restructuring firms of similar stature to Merritt Advisors and for comparable engagements, both in and out of court. The Debtors respectfully submit that the indemnification provisions contained in the Engagement Agreement, viewed in conjunction with the other terms of Merritt Advisors' proposed retention, are reasonable and in the best interests of the Debtors, their estates, and creditors in light of the fact that the Debtors require Merritt Advisor's services to successfully reorganize.

## VIII.  Disinterestedness

22. To the best of the Debtors' knowledge, and as set forth in the Merritt Declaration, Merritt Advisors has not represented the Debtors' creditors, or any other party-in-interest, or its respective attorneys and accountants, or the United States Trustee in any matters relating to the Debtors or their estate.

23. To the best of the Debtors' knowledge, and as set forth in the Merritt Declaration, no professional of Merritt Advisors is related or connected to any United States Bankruptcy Judge for the State of Texas or the United States Trustee or to any employee in the offices thereof.

24. To the best of the Debtors' knowledge, and as set forth in the Merritt Declaration, neither Merritt Advisors nor any officer or director of Merritt Advisors has any connection or relationship with the Debtors, their creditors, or other parties in interest that would conflict with

the scope of Merritt Advisors' retention or would create any interest adverse to the Debtors' estates, the potential members of any statutorily appointed committee that might come about, or any other party in interest. The Debtors understand that Merritt Advisors has and will continue to represent clients in matters unrelated to these cases and has had and will continue to have relationship in the ordinary course of its business with certain professionals in connection with matters unrelated to these cases.

25. In addition, as set forth in the Merritt Declaration, if any new material facts or relationships are discovered or arise, Merritt Advisors will provide the Court with a supplemental declaration.

26. To the best of the Debtors' knowledge, information, and belief, Merritt Advisors represents no other interest adverse to the Debtors' or its estate. The Debtors believe and represents that, to the best of its knowledge, Merritt Advisors is a "disinterested person" as that term is defined in Code § 101(14).

### IX. Basis of Relief for Employment Under Code §§105(a) and 363(b)

27. The Debtors submits that its employment of Merritt Advisors would be in the best interests of the Debtors, the respective estates, and all creditors. The Debtors' knowledge, information, and belief regarding the matters set forth herein are based and made in reliance upon the Merritt Declaration.

28. Code §363(b) provides, in part, that a debtor in possession "after notice and hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Under applicable case law, in this and other circuits, if a debtor's proposed use of its

assets pursuant to Code §363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved.[4]

29. The retention of restructuring advisors is proper under Code §363(b) and numerous courts have authorized retention of such personnel utilizing this provision of the Bankruptcy Code.

30. The Debtors accordingly submit that the retention of Merritt Advisors and the employment of Mr. Merritt under the terms contained in the Engagement Agreement should be approved and will greatly benefit the Debtors' estates and creditors.

## X. Nunc Pro Tunc Approval Requested Under LBR 9007(d)

31. The Debtors request that the employment of Merritt Advisors be made effective *nunc pro tunc* to March 6, 2017, in order to allow Merritt Advisors to be compensated for the work performed for the Debtors following such date, but prior to the Court's consideration of this Application.

32. Upon receipt of the Engagement Agreement signed by the Debtors, Mr. Merritt immediately turned his attention to urgent matters including, but not limited to, addressing a variety of day-to-day business issues of the Debtors and initial matters necessary for the functioning of these Chapter 11 cases such as schedules and cash flow budgeting. The Debtors submit that under the circumstances of these cases, and to avoid irreparable harm to the Debtors'

---

[4] *See, e.g., Comm. Of Equity Sec. Holders v. Lionel Co. (In re Lionel Corp.)*, 722 F.2d 1063,1070 (2d Cir. 1983); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386,390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to Section 363(b); *Committee of Asbestos-Related Litigants v. JohnsManville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612,616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

estates that could have occurred if Mr. Merritt had not commenced work immediately, retroactive approval of the retention of Merritt Advisors to March 6, 2017 is necessary and warranted.

33. The Debtors further provide the following information pursuant to LBR 9007(d).

    (a)    9007(d)(1) timing of Application not filed earlier. The Debtors filed this Application as soon as was possible after the retention of Merritt Advisors on March 6, 2017, taking into consideration the ongoing nature of these cases and the crush of initial issues which normally would have been handled earlier in the lifespan of a Chapter 11 case.

    (b)    9007(d)(2) why nunc pro tunc approval required: Approval of the Application to March 6, 2017 is necessary because of the substantial ongoing services rendered by Merritt Advisors on and since such date.

    (c)    9007(d)(3) potential prejudice of parties: No parties will be negatively impacted by *nunc pro tunc* approval. Instead, parties will be benefited by the continued services of Merritt Advisors.

### XI. Conclusion

34. The Debtors believe that the employment of Merritt Advisors will be in the best interest of the estates and, accordingly, the Debtors request that Merritt Advisors be employed as restructuring advisor for the Debtors. The Debtors request that Merritt Advisors employment be approved effective *nunc pro tunc* as of March 6, 2017.

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that this Court enter an order (a) authorizing the Debtors to retain and employ Jeff Merritt and Merritt Advisors as restructuring advisors in these Chapter 11 cases effective *nunc pro tunc* as of March 6, 2017 pursuant to Code §§105(a) and 363(b), and granting the Debtors such other and further relief to which the Debtors are entitled at law or in equity.

Dated: April 4, 2017

Respectfully submitted:

WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By: */s/ Jeff Carruth*
    JEFF CARRUTH (TX SBN:. 24001846)
    3030 Matlock Rd., Suite 201
    Arlington, Texas 76105
    Telephone: (713) 341-1158
    Fax: (866) 666-5322
    E-mail: jcarruth@wkpz.com

PROPOSED ATTORNEYS FOR TX. C. C., INC., ET AL., DEBTORS AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

     A true and correct copy of this item was served on April 4, 2017 by first class mail upon the parties appearing in the Master Service List of the Debtors and other wise by email by the parties so designated in the Master Service List and in accordance with the order limiting notice (Docket No. 46). A copy of the Master Service List is separately filed with the Court.

                                                  */s/ Jeff Carruth*
                                                  Jeff Carruth

**EXHIBIT 1**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 17-40297 |
| TX. C. C., INC., et al. | § | (Chapter 11) |
| | § | Jointly administered. |
| Debtors. | § | |

**DECLARATION OF JEFF MERRITT IN SUPPORT OF APPLICATION OF DEBTORS AND DEBTORS-IN-POSSESSION FOR AN ORDER PURSUANT TO 11 U.S.C. §§105 AND 363 AUTHORIZING THE RETENTION AND EMPLOYMENT OF JEFF MERRITT AND MERRITT ADVISORS AS RESTRUCTURING ADVISORS FOR THE DEBTORS NUNC PRO TUNC**

Pursuant to 28 U.S.C. § 1746, Jeff Merritt, hereby declares the following under penalty of perjury of the laws of the United States that the following statements are true and correct.

1.  My name is Jeff Merritt. I am more than twenty-one (21) years of age and am competent and authorized to make this affidavit. I have personal knowledge of the facts set forth herein and they are true and correct.

2.  This affidavit was prepared and is being submitted as an exhibit to the *Application of Debtors and Debtors-in-Possession for an Order Pursuant to 11 U.S.C. §§105 and 363 Authorizing the Retention and Employment of Jeff Merritt and Merritt Advisors as Restructuring Advisors For the Debtors Nunc Pro Tunc* (the "Application").

3.  I have read the Application and Merritt Advisors agrees to the terms of employment set forth therein and in the Engagement Agreement attached to the Application as Exhibit 2.

4.  Merritt Advisors maintains its principal place of business 101 S. Coit Road, Suite 36-306, Richardson, Texas 75080.

5.  Merritt Advisors has been asked to assist the Debtors in operating on a day to day basis as well as in evaluating and implementing strategic and tactical options related to the Debtors' business operations and managing the Debtors' restructuring process, including a Chapter 11 plan of reorganization and/or sale of assets, as may be required.

6.  On March 6, 2017, LS Management, Inc. executed and delivered to Merritt Advisors the Engagement Agreement attached to the Application as Exhibit 2.

7.  I will be primarily responsible for Merritt Advisor's work as restructuring advisor.

**EXHIBIT 1**

8. My normal hourly rate is $375.00 per hour.

9. No promises have been made or received by Merritt Advisors or by any of its members or associates as to compensation in connection with this case, except in accordance with the provisions of the Bankruptcy Code. Merritt Advisors has no agreement with any individual or entity to share with such individual or entity any compensation Merritt Advisors receives in connection with this case, except in accordance with Code § 504.

10. To the best of my knowledge and belief, Merritt Advisors has no known connections with the Debtors, their creditors, other parties-in-interest, or the respective attorneys and accountants thereof, except that members of Merritt Advisors previously have worked with the attorneys in this case, and creditors in this case may have been creditors in other cases in which Merritt Advisors has been employed. Merritt Advisors does not provide services for or represent any party-in-interest in this case. To the best of my knowledge and belief, Merritt Advisors is a "disinterested person" as that term is defined and used in Code §§ 101(14) and 327.

11. Although every effort has been made to identify all potential conflicts of interest, Merritt Advisors may discover additional connections with creditors and parties-in-interest that were not initially known to or discoverable by Merritt Advisors. Merritt Advisors will investigate any such connections if and when they become known. If Merritt Advisors discovers any material conflict of interest, or any information materially contrary or in addition to that set forth herein, Merritt Advisors will promptly disclose such contrary or additional information to the Court and seek instruction of the Court.

12. To the best of my knowledge and belief, no reason exists to deny the Debtors' employment and retention of Merritt Advisors as set forth in the Application.

FUTHER DECLARANT SAYEHT NOT

                                                MERRITT ADVISORS

                                                /s/ Jeff Merritt
                                                JEFF MERRITT

**DECLARATION OF JEFF MERRITT – Page 2**
1313487.DOCX[2]

Jeffrey Merritt
Merritt Advisors
101 S. Coit Road, Ste. 36-306
Richardson, TX 75080

March 6, 2017

Nicole Omholt
LS Management, Inc.
5055 W. Park Boulevard, Ste. 500
Plano, TX 75093

Dear Nicole:

This engagement agreement sets forth the terms and, conditions of the engagement between Merritt Advisors ("MA") and LS Management, Inc. and all affected affiliates and subsidiaries ("the Company") including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the retainer described below, this letter will constitute an agreement between the Company and MA.

1. Description of Services

    a. <u>Restructuring Advisor.</u> In connection with this engagement, MA shall make available to the Company Jeffrey Merritt to serve as the Restructuring Advisor ("RA") to the Company.

    b. <u>Duties.</u>

        i. The RA will begin the engagement by assisting Company management in putting together and coordinating preparations of bankruptcy schedules and the statement of financial affairs for each entity;

        ii. The RA will assist with preparation of information for bankruptcy counsel and bankruptcy meetings and hearings, the RA shall also be available to attend meetings and hearings;

        iii. The RA will perform an assessment of the business to determine the financial viability of the Company including financial and cash flow projections and in the process assist in the identification and implementation of cost reduction and balance sheet cleanup;

        iv. The RA will be working with other Company officers and outside Company advisors, to develop possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company and in the process, develop a plan of reorganization. The plan of reorganization may include the possible sale of the Company or some or all of its assets. If it is determined a sale is the best alternative, the RA will run the sale process and;

        v. The RA shall perform such other services as requested or directed by the Company's CFO.

    c. <u>Reporting.</u> The RA shall regularly report to the CFO, no less often than weekly.

N.O.

Merritt Advisors / LS Management, Inc.
March 6, 2017

    d. <u>Employment by MA.</u> The RA will continue to be employed by MA and while rendering services to the Company, may continue to work with other personnel at MA in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement.

    e. <u>Projections; Reliance; Limitation of Duties.</u> You understand that the services to be rendered by the RA may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the RA will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the RA nor MA makes any representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative presented will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, neither the RA nor MA assumes responsibility for the selection of any restructuring proposal or strategic alternative that any such officer assists in formulating and presenting, and the RA shall be responsible for implementation only of the proposal or alternative approved by the CFO and only to the extent and in the manner authorized and directed by the CFO.

    f. <u>Additional Responsibilities.</u> Upon the mutual agreement of the Company and MA, MA may provide such additional personnel as the Company may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Company and MA shall agree.

    g. <u>MA may communicate and interact directly with bankruptcy counsel.</u>

2. <u>Compensation</u>

    a. MA will be paid for the RA services rendered at a rate of $375.00 per hour to be billed against a retainer of $50,000.00 which will be an evergreen retainer, or, in other words, a security deposit. At the end of each month, MA will produce a statement detailing time spent and expenses incurred in connections with the assignment, and Company shall pay the statement within ten (10) business days without use of or reliance upon the funds in the $50,000 retainer. If any statement is not paid timely, MA may then terminate the representation at the sole discretion of MA and apply the retainer against any unpaid statements. Upon other termination or completion of the representation, the $50,000 retainer may be applied against the last statement.

    b. In addition, MA will be reimbursed by the Company for the reasonable out-of pocket expenses of the RA, and if applicable other MA personnel, incurred in connection with the assignment, such as travel, lodging, duplications, computer research, messenger and telephone charges. In addition, MA will be reimbursed by the Company for the reasonable fees and expenses of its counsel incurred in connection with enforcement of this Agreement.

3. <u>Term</u>

The engagement will commence as of the date hereof and may be terminated by either party without

n.0.

2

Merritt Advisors / LS Management, Inc.
March 6, 2017

Cause by giving 15 days' written notice to the other party. In the event of any such termination, any fees and expenses due to MA shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination).

4. Confidentiality.

The RA and MA shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

5. Indemnification.

The Company shall indemnify and hold harmless the RA and MA and its employees or partners against any and all losses, claims, damages, expenses or liabilities whatsoever, joint or several, which may arise out of or in connection with the performance of this agreement, or the performance of MA. This indemnification and hold harmless agreement shall not apply to any intentionally wrongful acts of the RA or MA or the gross negligence of the RA or MA, its employees or partners. The RA shall be covered as an officer under the Company's existing director and officer liability insurance policy or equivalent acceptable to MA. The termination of this agreement or the engagement shall not affect the indemnification, which shall survive termination.

6. Miscellaneous.

This Agreement shall be: (a) governed and construed in accordance with the laws of the State of Texas, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and MA agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or MA hereunder.

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

*[continued below]*

3

N.O.

Merritt Advisors / LS Management, Inc.
March 6, 2017

Very truly yours,

Merritt Advisors

By: _____
Jeffrey Merritt
Principal

Accepted and Agreed:

LS Management, Inc.:

By: _____
Nicole Omholt
CFO and Vice President

4

N.O.