Jeff Carruth (TX SBN: 24001846)
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd. Suite 201
Arlington, Texas 76105
Telephone: (713) 341-1158
Fax: (866) 666-5322
E-mail: jcarruth@wkpz.com

**ATTORNEYS FOR TX. C. C., INC., ET AL.,
DEBTORS AND DEBTORS IN POSSESSION**

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | |
|---|---|
| IN RE: § | |
| § | Case No. 17-40297 |
| TX. C. C., INC., et al. § | (Chapter 11) |
| § | (Jointly Administered.) |
| Debtors. § | **HEARING SET PER PRIOR ORDER:** |
| § | **July 24, 2017 at 1:30 p.m.** |

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF**

**TO THE HONORABLE BRENDA T. RHOADES, U.S. BANKRUPTCY JUDGE:**

TX. C.C., Inc. and the related debtors and debtors in possession[1] (collectively, the "Debtors") file this *Motion for Order Authorizing (I) Sale of Substantially All of the Estates' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (II) Assumption and*

---

[1] The debtors in these Chapter 11 cases (each a "Debtor" and collectively, the "Debtors") are TX. C. C., Inc. (Case No. 17-40297), Texas Land & Cattle of Fairview, LLC (Case No. 17-40300), Lone Star Steakhouse & Saloon of Springfield, Inc. (Case No. 17-40303), Lone Star Steaks, Inc. Case No. 17-40330), Texas Land & Cattle Steakhouse of North Carolina (Case No. 17-40332), TXLC of Arlington II, LLC (Case No. 17-40333), Lone Star Steakhouse & Saloon of Southern Missouri (Case No. 17-40334), Lone Star Steakhouse & Saloon of Florida, Inc. (Case No. 17-40335), TXLC of Missouri, Inc. (Case No. 17-40336), Lone Star Steakhouse & Saloon of Michigan, Inc. (Case No. 17-40339), Lone Star Steakhouse & Saloon of Mississippi, Inc. (Case No. 17-40340), Lone Star Steakhouse & Saloon of Oklahoma, Inc. (Case No. 17-40341), Lone Star Steakhouse & Saloon of Ohio, Inc. (Case No. 17-40342), and Texas LC Liquor Company (Case No. 17-40443), and LS Management, Inc. (Case No. 17- 17-40508).

*Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale, and (III) Related Relief* (the "363 Motion"), and in support thereof would show the Court the following.

## INTRODUCTION

1. By this 363 Motion, the Debtors request entry of an order for the proposed sale and disposition of substantially all of the assets of the Texas Land & Cattle and Lone Star Steakhouse & Saloon (together, the "Brands") branded restaurants referenced and described in **Exhibit 1** attached hereto and incorporated by reference herein (collectively the "Restaurants") that are owned and operated by the Debtors in the above-captioned cases (the "Bankruptcy Cases") and from the respective Chapter 11 estates of the Debtors (the "Estates"), which sale shall be conducted pursuant to § 363 of the United States Bankruptcy Code, Title 11 U.S. Code, 11 U.S.C. §101 et seq. (the "Code") and the related assumption and assignment of executory contracts and unexpired leases conducted pursuant to Code § 365.

2. This is the 363 Motion contemplated by the Bid Procedures Order (defined below).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over these Chapter 11 cases and this 363 Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

# FACTUAL BACKGROUND

**The Commencement of the Bankruptcy Cases.**

4.  The Debtors each filed a voluntary petition under Chapter 11 of the Code on the dates indicated below (the "Petition Dates" or each as applicable a "Petition Date"), thereby initiating the respective bankruptcy cases and creating their respective Estates.

| Debtor | Case No. | Petition Date |
| --- | --- | --- |
| TX. C. C., Inc. | 17-40297 | 2/13/2017 |
| Texas Land & Cattle of Fairview, LLC | 17-40300 | 2/13/2017 |
| Lone Star Steakhouse & Saloon of Springfield, Inc. | 17-40303 | 2/13/2017 |
| Lone Star Steaks, Inc. | 17-40330 | 2/17/2017 |
| Texas Land & Cattle Steakhouse of North Carolina, Inc. | 17-40332 | 2/18/2017 |
| TXLC of Arlington II, LLC | 17-40333 | 2/18/2017 |
| Lone Star Steakhouse & Saloon of Southern Missouri | 17-40334 | 2/19/2017 |
| Lone Star Steakhouse & Saloon of Florida, Inc. | 17-40335 | 2/19/2017 |
| TXLC of Missouri, Inc. | 17-40336 | 2/19/2017 |
| Lone Star Steakhouse & Saloon of Michigan, Inc. | 17-40339 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Mississippi, Inc. | 17-40340 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Oklahoma, Inc. | 17-40341 | 2/20/2017 |
| Lone Star Steakhouse & Saloon of Ohio, Inc. | 17-40342 | 2/21/2017 |
| TX LC Liquor Company | 17-40443 | 3/3/2017 |
| LS Management, Inc. | 17-40508 | 3/8/2017 |

5.  The Debtors are operating as debtors-in-possession pursuant to Code §§ 1107 and 1108.

6.  No trustee, examiner, or statutory creditors' committee has been appointed in these Chapter 11 cases.

**The identity and background of the Debtors and Debtors in Possession.**

7.  The Debtors own and operate two steakhouse dining concepts, Texas Land & Cattle and Lone Star Steakhouse & Saloon.

8. As of the filing of this Motion, the Debtors currently operate a total of twenty-nine (29) locations across the two brands. *See* Exhibit 1.

**Sale of the Restaurant Assets.**

9. The Debtors believe that a sale of the Restaurants is in the best interest of the Estates and all creditors.

10. On June 6, TX. C.C., Inc. the *Debtors filed the Emergency Motion for Order (I) Approving Bid Procedures Relating to Sale of Substantially All of the Estates' Assets; (II) Approving Bid Protections; (III) Scheduling a Hearing to Approve the Sale; (IV) Approving the Form and Manner of Notices; (V) Establishing Procedures Relating to the Assumption and Assignment of Certain Leases and/or Contracts, Including Notice of Proposed Cure Amounts; and (VI) Granting Related Relief* (Docket No. 297) (the "Bid Procedures Motion")

11. On June 16, 2017, the Bankruptcy Court entered the *Order Approving Emergency Motion for Order (I) Approving Bid Procedures Relating to Sale of Substantially All of the Estates' Assets; (II) Approving Bid Protections; (III) Scheduling a Hearing to Approve the Sale; (IV) Approving the Form and Manner of Notices; (V) Establishing Procedures Relating to the Assumption and Assignment of Certain Leases and/or Contracts, Including Notice of Proposed Cure Amounts; and (VI) Granting Related Relief* (Docket No. 318) (the "Bid Procedures Order"), which Bid Procedures Order approved the Bid Procedures Motion, this Notice, and certain Bid Procedures for the sale of substantially all of the assets of the Debtors associated with the operation of the Texas Land & Cattle and Lone Star Steakhouse & Saloon restaurants operated by the Debtors (the "Restaurant Assets").

12. Pursuant to the Bid Procedures Order, the Court set the following timetable for the conduct of a sale of the Restaurant Assets.

| **SUMMARY OF DATES AND DEADLINES** | |
|---|---|
| Restaurant Lease Cure Notice service date | **June 16, 2017**[2] |
| Executory Contracts Cure Notice service date | **June 26, 2017** |
| Restaurant Lease Cure Notice objection date | **July 6, 2017** |
| Executory Contracts Cure Notice objection date | **July 11, 2017** |
| **BID DEADLINE** | **July 17 2017** |
| **Filing of highest bid received by Bid Deadline and list of Auction Participants** | **July 18, 2017**, 1:00 p.m. |
| **AUCTION** | **July 20, 2017,** 10:00 a.m. |
| Filing and service of Winning Bid and Winning Bidder's APA from Auction | **July 21, 2017,** 1:00 p.m. |
| Deadline to object to 363 Motion (defined below) | **July 21, 2017** |
| Sale Hearing | **July 24, 2017**, 1:30 p.m. |
| Closing Deadline | **July 25, 2017** |

13. On June 16, 2017, the Debtors served the *Restaurant Leases Cure Amount Notice* (Docket No. 319) as referenced and described in the Bid Procedures Order.

14. The Debtors have not yet identified any executory contracts that would be assumed and assigned in connection with the sale of the Restaurant Assets, which executory contracts are defined in the Bid Procedures Order as the "Designated Executory Contracts." ***The Debtor by a separate motion will seek to assume and assign any executory contracts that are desired by Successful Bidder.***

### RELIEF REQUESTED

15. The Debtors respectfully request entry of an order at the conclusion of the Sale Hearing, substantially in the form attached hereto as **Exhibit 2** (the "Sale Order"):[3]

---

[2] Unless otherwise expressly provided, the time of day for all dates and deadlines is 11:59 p.m.

[3] The Sale Order may be amended before or during the Sale Hearing.

---

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 5** (1342636.DOCX)

a. authorizing and approving the Sale of the Restaurant Assets and/or the Acquired Property[4] (as defined in the Bid Procedures) to the Successful Bidder (as defined in the Bid Procedures) from the Auction;

b. authorizing and approving the Sale of all or substantially all of the Restaurant Assets and/or the Acquired Property free and clear of liens, claims, encumbrances, and other interests to the extent set forth in the Successful Bid;

c. authorizing the assumption and assignment of the Designated Restaurant Leases as set forth in the successful bid;

d. waiving the 14-day stay Bankruptcy Rules 6004(h) and 6006(d) with respect to the implementation of the Sale Order and Closing; and

e. granting any related relief.

## BASIS OF RELIEF

16. Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets.[5]

17. The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate.[6]

---

[4] Unless otherwise defined herein, all capitalized terms shall have the same meaning ascribed to such terms in the Bid Procedures Order (defined above) or in the Bid Procedures (defined above, and contained within the Bid Procedures Order).

[5] *See, e.g., In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'" (internal citations omitted)); *In re Martin*, 91 F.3d 389, 395 (3d Cir. 1996) (quoting *In re Schipper*); *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (same); *see also In re Integrated Resources, Inc.*, 147 B.R. 650, 656-7 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by a trustee are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid").

[6] *See In re Edwards*, 228 B.R. 552, 561 (Bankr. E.D. Pa. 1998) ("The purpose of procedural bidding orders is to facilitate an open and fair public sale designed to maximize value for the estate."); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (internal citations omitted).

---

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 6**  (1342636.DOCX)

18. Code § 363(b)(1) provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."[7] A sale of the debtor's assets should be authorized pursuant to Code § 363 if a sound business purpose exists for the proposed transaction based upon a business judgment standard.[8] Application of the business judgment standard depends on the particular case.[9] "The business judgment standard in § 363 is flexible and encourages discretion."[10]

19. Court apply a great deal of deference to a debtor's decision under the business judgment rule.[11] Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company."[12]

**A Sound Business Purpose Exists for the Sale.**

20. The Debtors have a sound business justification for selling the Restaurant Assets. First, the Debtors believe the Sale will maximize the going-concern value of the Restaurant Assets by allowing a party to bid on assets that would have substantially less value on a stand-alone basis.

---

[7] 11 U.S.C. § 363(b)(1).

[8] *Asarco, Inc. v. Elliot Mgmt. (In re Asarco, LLC)*, 650 F.3d 593, 601 (5th Cir. 2011); *see also In re Schipper*, 933 F.2d 513, 515 (7th Cir. 1991) (same); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983).

[9] *Id.*

[10] *Id.*

[11] *See In re Asarco LLC*, 441 B.R. 813, 828 (S.D. Tex. 2010).

[12] *In re S.N.A. Nut Co.*, 186 B.R. 98, 102 (Bankr. N.D. Ill 1995) (citations omitted); *In re Filene's Basement, LLC*, 11-13511 (KJC), 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014) ("If a valid business justification exists, then a strong presumption follows that the agreement at issue was negotiated in good faith and is in the best interests of the estate") (citations omitted); *Integrated Res.*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtor's management decisions.").

21. Second, the sale of the Restaurant Assets will be subject to competing bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Restaurant Assets. Consequently, the ultimately successful bid, after being subject to a "market check" in the form of the Auction, will constitute, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Restaurant Assets and will provide a greater recovery for the estates than any known or practicably available alternative.[13]

22. Third, the sale also provides the best means of maximizing the potential for payment in full of priority claims and a distribution to unsecured creditors. Thus, the Debtors submit that the Successful Bidder's Asset Purchase Agreement ("APA")[14] will constitute the highest or otherwise best offer for the Restaurant Assets and will provide a greater recovery for the Debtors' estates than would be provided by any other available alternative. As such, the Debtors' determination to sell the Restaurant Assets through an Auction process and subsequently to enter into the Successful Bidder's APA will be a valid and sound exercise of the Debtor's business judgment.

23. The Debtors will submit evidence at the Sale Hearing to support these conclusions. Therefore, the Debtors request that the Court make a finding that the proposed sale of the Restaurant Assets is a proper exercise of the Debtors' business judgment and is rightly authorized.

---

[13] *See, e.g., In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

[14] Depending upon the results of the Auction and the configuration of the Successful Bid(s) as to different assets, it is possible that more than one Successful Bidder may be presented at the Sale Hearing.

**The Sale and Purchase Price Well Reflect a Fair Value Transaction.**

24. It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market.[15]

25. The Debtors request that the Court find the Successful Bidder(s) arising from the Auction is/are entitled to the benefits and protections provided by Code § 363(m) in connection with the sale of the Restaurant Assets.[16]

26. Pursuant to Code § 363(m), a good faith purchaser is one who purchases assets for value, in good faith, and without notice of adverse claims.[17] Code § 363(m) thus protects the purchaser of assets sold pursuant to Code § 363 from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith." While the Bankruptcy Code does not define "good faith," courts have held that a purchaser shows its good faith through the integrity of its conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good-faith finding may not be made.[18]

---

[15] *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, *4 (Bankr. D. Del. 2001) (while a "section 363(b) sale transaction does not require an auction procedure," "the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction.").

[16] Code § 363(m) provides in pertinent part: [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

[17] *O'Dwyer v. O'Dwyer (In re O'Dwyer),* 611 Fed. App'x 195, 200 (5th Cir. 2015).

[18] *See, e.g., In re Abbotts Dairies of Pa., Inc.* ("Typically, the misconduct that would destroy a [buyer's] good faith status at a judicial sale involves fraud, collusion between the [proposed buyer] and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders."); *In the Matter of Andy Frain Services, Inc.*, 798 F.2d 1113 (7th Cir. 1986) (same); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

27. The Debtors submit that the Successful Bidder arising from the Auction is or would be "good faith purchasers" within the meaning of Code § 363(m), and the APA is or would be a good-faith agreement entered into on arms'-length terms and entitled to the protections of Code § 363(m).

28. The Debtors believe that a finding of good faith within the meaning of Code § 363(m) will be appropriate for any Successful Bidder arising from the Auction. Pursuant to the Bid Procedures, any Successful Bidder will have had to present a proposal in accordance with the Bid Procedures. In addition, the Debtors will not choose as the Successful Bidder or backup bidder (as defined in the Bid Procedures) any entity whose good faith under Code § 363(m) can reasonably be doubted, and will be prepared to present the Court with sufficient evidence to allow the Court to find that the "good faith" standard of Code § 363(m) has been satisfied.

**The Sale Should be Approved "Free and Clear" Under Section 363(f).**

29. Code § 363(f) permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.[19]

30. With the limited exception of statutory tax liens pertaining to current year taxes, on the Debtors' business personal property, the Debtors are unaware of any liens or security interests which might encumber the Restaurant Assets.

---

[19] *See* 11 U.S.C. § 363(f).

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 10** (1342636.DOCX)

31. Code § 363(f) is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Restaurant Assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable APA.[20]

32. The Debtors submit that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of Code § 363(f), and that any such interest will be adequately protected by either being paid in full at the time of closing, or by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto. The Debtors accordingly request authority to convey the Restaurant Assets the Successful Bidder arising from the Auction, if any, free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

**The Assumption and Assignment of the Designated Restaurant Leases Should Be Approved.**

*The Assumption and Assignment of the Designated Restaurant Leases Reflects the Debtors' Reasonable Business Judgment.*

33. To facilitate and effectuate the sale of the Restaurant Assets, the Debtors are seeking authority to assign or transfer the Designated Restaurant Leases to the Successful Bidder arising from the Auction.

34. Code § 365 authorizes a debtor to assume and/or assign his executory contracts and unexpired leases, subject to the approval of the court, provided that the defaults under such

---

[20] *See In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("[I]f any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens.").

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 11** (1342636.DOCX)

contracts and leases are cured and adequate assurance of future performance is provided. The Debtors' decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.[21]

35. Here, the Court should approve the decision to assume and assign the Designated Restaurant Leases in connection with the Sale as a sound exercise of the Debtors' business judgment: First, the Designated Restaurant Leases are necessary to operate the Restaurant Assets and, as such, they are essential to inducing the best offer for the Restaurant Assets. Second, it is unlikely that any purchaser would want to acquire the Restaurant Assets without the Designated Restaurant Leases.

*36.* ***THE BID PROCEDURES ORDER REQUIRES THAT THE DEBTORS BY 1:00 P.M. ON JULY 18, 2017 THE HIGHEST BID RECEIVED BY BID DEADLINE AND LIST OF AUCTION PARTICIPANTS. SIMULTANEOUSLY WITH THAT FILING THE DEBTORS WILL FILE AND SERVE A SUPPLEMENT TO THIS 363 MOTION A LIST OF THE DESIGNATED RESTAURANT LEASES THAT ARE SUBJECT TO (POTENTIAL) ASSUMPTION AND ASSIGNMENT AS A RESULT OF THE AUCTION.***

---

[21] *See, e.g., Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co.*, 318 U.S. 523 (1943) (applying Bankr. Act section 77(b), predecessor to Code § 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989) (describing deference to a debtor's business judgment as "breathing space afforded [to] the debtor to consider whether to reject or assume executory contracts under the Code."); *In re Network Access Solutions, Corp.*, 330 B.R. 67, 75 (Bankr. D. Del. 2005) ("The standard for approving the assumption of an executory contract is the business judgment rule"); *In re Exide Techs.*, 340 B.R. 222, 239 (Bankr. D. Del. 2006) ("The propriety of a decision to reject an executory contract is governed by the business judgment standard").

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 12**  (1342636.DOCX)

37. Accordingly, the Debtors submit that the assumption and assignment of the Designated Restaurant Leases by way of the Bid Procedures and Auction should be approved as an exercise of their business judgment.

### *Defaults Under the Designated Leases Will Be Cured Through the Sale.*

38. Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of Code § 365(b), specifically that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract, (b) compensate parties for pecuniary losses arising therefrom, and (c) provide adequate assurance of future performance thereunder.[22] This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting non-debtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."[23]

39. The Debtors submit that the statutory requirements of Code § 365(b)(1)(A) will be promptly satisfied because any monetary defaults will be cured by the Successful Bidder and/or through the Purchase Price. Because the Bid Procedures Order and/or the Bid Procedures provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtors are confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Code and with due respect to the rights of non-debtor parties.

---

[22] Code § 365(b).

[23] *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 13** (1342636.DOCX)

### *Non-Debtor Parties Will Be Adequately Assured of Future Performance.*

40. Similarly, the Debtors submit that the third requirement of Code § 365(b) adequate assurance of future performance-is also satisfied given the facts and circumstances present here. "The phrase 'adequate assurance of future performance' adopted from §2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case."[24] Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned.[25]

41. The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Designated Restaurant Leases to the Successful Bidder arising from the Auction, will be satisfied. As required by the Bid Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder (e.g., financial credibility, willingness, and ability of the interested party to perform under the Designated Restaurant Leases) and will demonstrate such financial wherewithal, willingness, and ability to perform under the Designated Restaurant Leases assigned to any Successful Bidder arising from the Auction. Further, the parties will have the opportunity to evaluate and, if necessary, challenge at the Sale Hearing the ability of the Successful Bidder(s) to provide adequate assurance of future performance and object to the assumption of the Designated Restaurant Leases and/or proposed cure amounts.

---

[24] *In re U.L. Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982). Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns, Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).

[25] *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

**MOTION FOR ORDER AUTHORIZING (I) SALE OF SUBSTANTIALLY ALL OF THE ESTATES' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH THE SALE, AND (III) RELATED RELIEF — Page 14** (1342636.DOCX)

**Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

42. Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise." Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the trustee to assign an executory contract or unexpired lease . . . is stayed until the expiration of fourteen days after the entry of the order, unless the court orders otherwise."

43. The Debtors request that the Sale Order be effective immediately upon its entry by providing that the fourteen-day stays under Bankruptcy Rules 6004(h) and 6006(d) are waived.

44. The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.[26] Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the fourteen-day stay period, the leading treatise on bankruptcy suggests that the fourteen-day stay should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to procedure."[27]

45. To maximize the value received for the Restaurant Assets, the Debtors seek to close the Sale as soon as possible after the Sale Hearing. Accordingly, the Debtors hereby request that the Court waive the fourteen-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

---

[26] *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).

[27] 10 Collier on Bankruptcy 6004.10 (15th rev. ed. 2006).

**Notice.**

46. Copies of this 363 Motion are being provide to the Debtors Master Service List as well as all parties who have requested to be on the Debtors' distribution list over the court of these Bankruptcy Cases.

47. In addition, notice of the Sale has been provided to all creditors of the Debtors according to the Debtors' creditors lists and the proof of claims on file in this case.

48. The Debtors submit that, in light of the nature of the relief requested and under the circumstances of these Bankruptcy Cases, no other or further notice need be given.

## RESERVATION OF RIGHTS

49. Debtors reserve the right to amend, supplement, and/or withdraw this 363 Motion prior any interim hearing or final hearing.

## APPLICABLE AUTHORITIES

50. Debtors reserve the right to file a separate brief in support of the relief requested in this 363 Motion.

## DECLARATION IN SUPPORT

51. The Debtors reserve the right to file a separate declaration in support of this 363 Motion, which will be filed prior to the hearing.

## CONCLUSION AND PRAYER

WHEREFORE, the Debtors respectfully request entry of an providing for the sale of the Restaurant Assets as set forth above, and the assumption and assignment of the Designated Restaurant Leases as set forth herein. Debtors respectfully request such other and further relief to which they are entitled at law or in equity.

Dated: July 10, 2017　　　　　　　　Respectfully submitted:

                                 WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

                                 By: */s/ Jeff Carruth*
                                    JEFF CARRUTH (TX SBN:. 24001846)
                                    3030 Matlock Rd., Suite 201
                                    Arlington, Texas 76105
                                    Telephone: (713) 341-1158
                                    Fax: (866) 666-5322
                                    E-mail: jcarruth@wkpz.com

                                 ATTORNEYS FOR TX. C. C., INC., ET AL.,
                                 DEBTORS AND DEBTORS IN POSSESSION

## CERTIFICATE OF SERVICE

     A true and correct copy of this item was served on July 10, 2017 by first class mail upon the parties appearing in the Master Service List of the Debtors and other wise by email by the parties so designated in the Master Service List and in accordance with the order limiting notice (Docket No. 104). A copy of the Master Service List is separately filed with the Court.


                                           */s/ Jeff Carruth*
                                           Jeff Carruth

# **EXHIBIT 1**

## List of locations by brand, city, state, and entity

| State | City | Company / Debtor | Case # |
|---|---|---|---|
| **Lone Star Steakhouse & Saloon** | | | |
| FL | Orlando | Lone Star Steakhouse & Saloon of Florida, Inc. | 17-40335 |
| IL | Crestwood | Lone Star Steakhouse & Saloon of Springfield, Inc. | 17-40303 |
| IL | Effingham | Lone Star Steakhouse & Saloon of Springfield, Inc. | 17-40303 |
| IL | Joliet | Lone Star Steakhouse & Saloon of Springfield, Inc. | 17-40303 |
| MI | Dundee | Lone Star Steakhouse & Saloon of Michigan, Inc. | 17-40339 |
| MI | Mt. Pleasant | Lone Star Steakhouse & Saloon of Michigan, Inc. | 17-40339 |
| MO | Branson | Lone Star Steakhouse & Saloon of Southern Missouri, Inc. | 17-40334 |
| MS | Pearl | Lone Star Steakhouse & Saloon of Mississippi, Inc. | 17-40340 |
| NC | Ashville | Lone Star Steaks, Inc. | 17-40330 |
| NC | Clayton | Lone Star Steaks, Inc. | 17-40330 |
| NC | Knightdale | Lone Star Steaks, Inc. | 17-40330 |
| NC | Mooresville | Lone Star Steaks, Inc. | 17-40330 |
| NC | Mt. Airy | Lone Star Steaks, Inc. | 17-40330 |
| OH | Middletown | Lone Star Steakhouse & Saloon of Ohio, Inc. | 17-40342 |
| OK | Owasso | Lone Star Steakhouse & Saloon of Oklahoma, Inc. | 17-40341 |
| **Texas Land & Cattle** | | | |
| MO | Branson | TXLC of Missouri, Inc. | 17-40336 |
| NC | Concord | Texas Land & Cattle Steak House of North Carolina, Inc. | 17-40332 |
| TX | Arlington (DFW area) | TXLC of Arlington II, LLC | 17-40333 |
| TX | Austin - 290 | TX.C.C., Inc. | 17-40297 |
| TX | Austin - Mopac | TX.C.C., Inc. | 17-40297 |
| TX | Fairview (DFW area) | Texas Land & Cattle of Fairview, LLC | 17-40300 |
| TX | Frisco (DFW area) | TX.C.C., Inc. | 17-40297 |
| TX | Garland (DFW area) | TX.C.C., Inc. | 17-40297 |
| TX | Katy (Houston area) | TX.C.C., Inc. | 17-40297 |
| TX | Lakeline (Austin area) | TX.C.C., Inc. | 17-40297 |
| TX | Plano | TX.C.C., Inc. | 17-40297 |
| TX | San Antonio - I-410 | TX.C.C., Inc. | 17-40297 |
| TX | San Antonio - Riverwalk | TX.C.C., Inc. | 17-40297 |
| TX | Stassney (Austin area) | TX.C.C., Inc. | 17-40297 |

*EXHIBIT 2 — TO BE SUPPLIED*

Exhibit 1 — Page 1        1342636.DOCX [2]