# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| TX. C.C., INC., et al.[1] | § | CASE NO. 17-40297 |
| | § | (Chapter 7) |
| DEBTORS | § | Jointly Administered |

## MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT

### 21-Day Negative Notice

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you <u>must</u> file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading <u>*WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE*</u> shown in the certificate of service unless the court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The court reserves the right to set a hearing on any matter.**

Christopher J. Moser (the "Trustee"), the chapter 7 trustee for the above referenced Debtors ("Debtors") files this Motion for Approval of Settlement Agreement ("Motion") and would show the Court as follows:

---

[1] The debtors in these Chapter 7 cases, converted from Chapter 11 cases, (each a "Debtor" and collectively, the "Debtors") are TX. C.C., Inc. (Case No. 17-40297), Texas Land & Cattle of Fairview, LLC (Case No. 17-40300), Lone Star Steakhouse & Saloon of Springfield, Inc. (Case No. 17-40303), Lone Star Steaks, Inc. (Case No. 17-40330), Texas Land & Cattle Steakhouse of North Carolina (Case No. 17-40332), TXLC of Arlington II, LLC (Case No. 17-40333), Lone Star Steakhouse & Saloon of Southern Missouri (Case No. 17-40334), Lone Star Steakhouse & Saloon of Florida, Inc. (Case No. 17-40335, TXLC of Missouri, Inc. (Case No. 17-40336), Lone Star Steakhouse & Saloon of Michigan, Inc. (Case No. 17-40339), Lone Star Steakhouse & Saloon of Mississippi, Inc. (Case No. 17-40340), Lone Star Steakhouse & Saloon of Oklahoma, Inc. (Case No. 17-40341), Lone Star Steakhouse & Saloon of Ohio, Inc. (Case No. 17-40342), Texas LC Liquor Company (Case No. 17-40443, and LS Management, Inc. (Case No. 17-40508).

**MOTION TO APPROVE SETTLEMENT AGREEMENT**  Page | 1

# FACTS

**1. Background Facts**

1. On February 13, 2017 (the "Petition Date"), TX. C.C., Inc. ("Debtor") filed with this Court a voluntary petition under Chapter 11 of the Bankruptcy Code. TX. C.C.'s bankruptcy case was jointly administered with affiliated debtors (collectively, the "Debtors") pursuant to the Court's Order entered on March 14, 2017.

2. On September 7, 2017 (the "Conversion Date"), the Debtors' Chapter 11 cases were converted to cases under Chapter 7 of the Bankruptcy Code.

3. Christopher J. Moser was thereafter appointed interim trustee of the estate and is the acting Chapter 7 Trustee of the bankruptcy estates of the Debtors.

4. The Debtors, with the exception of LS Management, Inc. and TX LC Liquor Company, owned and operated either Lone Star Steakhouse & Saloons ("Lone Star") or Texas Land & Cattle Steak Houses ("Land & Cattle").

5. In addition to the Debtors, thirty-six (36) non-debtor Lone Star entities and four (4) non-debtor Land & Cattle entities exist. Some of these non-debtor entities apparently have additional subsidiaries. Lone Star and Land & Cattle are sometimes referred to herein as the "Operating Entities."

6. All the Lone Star entities are or were owned by LSF5 Cactus, LLC ("Cactus") and all of the Land & Cattle are or were owned by LSF5 Spur, LLC ("Spur").[2] Spur and Cactus are owned by LSF5 Cowboy Holdings, LLC ("Cowboy"). Cowboy is owned in turn by Day Star Restaurant Holdings, LLC ("Day Star") (collectively, the Cactus, Spur, Cowboy, and Day Star

---

[2] The Debtor entities were sold pursuant to the Court's sale orders. See Docket Nos. 410, 411, 422, 425, 426, 435, 437, 465, 486.

entities are referred to herein as the "Parent Companies"). The non-debtor Operating Entities and the Parent Companies are referred to herein collectively as the "Non-Debtors").

### B. The Motion to Consolidate

7. For various reasons, the Trustee filed a Motion to Consolidate the Debtors together with the Non-Debtors into one entity for purposes of bankruptcy administration and liquidation on December 12, 2017 (the "Motion to Consolidate"). Among the reasons for consolidating the Debtors and Non-Debtors is the cash management practice of the Parent Companies that existed prior to the Petition Date, and, upon information and belief, for a short period of time post-petition, whereby all cash proceeds from operations of the Debtors were funneled up to the Parent Companies' bank accounts for purposes of paying the costs of operations for all of the Debtors and Non-Debtors (the "Cash Management System").

8. For the reasons just described, in addition to having grounds to consolidate the Parent Companies, the realities of the Cash Management System also provided grounds for the Trustee to seek turnover and/or avoidance of all transfers from any of the Debtors to the Parent Companies. The Trustee considered moving forward on such claims; however, the lack of good accounting records in possession of the Trustee, especially records of the Non-Debtors, and the reality that all the Debtors and Non-Debtors were actually treated as a single entity with respect to the Cash Management System tilted the calculation in favor of the consolidation of Debtors with Non-Debtors. Nevertheless, such a consolidation would result in bringing additional claims into the already existing bankruptcy estates.

### C. The Accounting

9. Ultimately, sometime after the Motion to Consolidate was filed, the Parent Companies agreed to share information with the Trustee on an informal basis and to cooperate in

completing an accounting of the funds that were transferred from the Debtors to the Parent Companies and the expenditure of such funds, including on whose behalf (meaning which Debtor entity), through the payment of rent, vendors, employees, etc., such funds were used to further the operations of the business. The Trustee's accountants participated in conducting the accounting and verified the results using records and assistance from the Parent Companies' outside lawyer and financial professional and also the Debtors' records where available ("Accounting").

10. The Accounting was limited in time to December 7, 2016 forward until the date in May 2017 when the bank accounts of the Parent Companies were closed and all funds transferred to the IOLTA account of the Parent Companies' counsel, John Henry. The beginning date of the accounting was chosen because the relevant bank accounts at that time were at or approximately at $0.00. The Accounting reviewed the transfer and ultimate expenditure of over $45,000,000 of funds that were transferred to the Parent Companies by Debtors and Non-Debtors and ultimately encompassed over 750,000 data points in a spreadsheet created to track all the relevant transactions. In addition to this Accounting, the Parent Companies provided an additional accounting reviewed by the Trustee's accountants that tracked whether and to what extent such funds are sales tax and therefore the trust funds of one of the taxing authorities where a restaurant of the Debtors and Non-Debtors operated (the "Trust Funds Accounting").

11. The Parent Companies have agreed to further assist the Trustee by providing documents and information the Trustee requires to complete his review of the assets and potential claims of the estate under Chapter 5 of the Bankruptcy Code. As such, the Parent Companies have agreed to provide copies of all relevant bank accounts of the Parent Companies for February 2015-October 2017 that paid anything on account of the Debtors; copies of check registers for the accounts and time periods listed noted above; and vendor files for the time period noted above.

### D. The Settlement Payment

12. The funds remaining currently following the close of the Parent Companies' bank accounts is $1,099,230.00 (the "Remaining Funds"). All the Remaining Funds are subject to sales tax claims; however, a portion of such Remaining Funds are not subject to sales tax trust fund claims. Following the Accounting and the Trust Funds Accounting, the Parent Companies and the Trustee agree that the total amount of such Remaining Funds that can be traced to the Debtors and which are not trust funds is $113,000.00. Thus, the Trustee and the Parent Companies have agreed, subject to Court approval, for the Parent Companies to turnover $113,000 of the Remaining Funds to the Trustee (the "Settlement Payment") in return for the Trustee's release of all claims of the Debtors' estates to the Remaining Funds (the "Settlement Agreement"). A copy of the Settlement Agreement is attached hereto as Exhibit "A".

13. None of the funds that make up the Settlement Payment are subject to trust fund claims. The Trust Fund Accounting was conducted by tracking the lowest intermediate balance test which is the legal standard for such claims. The Settlement Agreement will resolve the Motion to Consolidate with respect to the Trustee's request to consolidate the Debtors with the Non-Debtors. The Settlement Agreement will also bring to the estates all funds that remain from those that were transferred to the Parent Companies by the Debtors either prior to or after the Petition Date without bringing any additional claims against the Debtors' estates, including any trust fund claims. The Settlement Agreement is conditioned upon the Court's approval, including that the Settlement Payment funds are not trust funds of any entity and not subject to any trust fund claims such that they can be administered by the Trustee in these bankruptcy cases. The Trustee will take up the remaining request for consolidation of the Debtors after the approval of the Settlement Agreement.

14. In addition to the notice required by the Bankruptcy Code and Rules regarding creditors of the Debtors, notice of this Motion will be provided to all taxing authorities that may have sales tax claims against the Remaining Funds and/or the Debtors.

**E. Additional Matters**
**(1) Credit Refund shall become property of the estate.**

14. Two additional matters have been agreed to by the Trustee and the Parent Companies that are not included in the written Settlement Agreement attached hereto, but regarding which the Trustee seeks Court approval. These are a credit refund from Exponent HR in the amount of $10,810.26 ("Credit Refund") and the abandonment and destruction of sensitive records and the abandonment of office property that is burdensome or of inconsequential value to the estates.

15. As described above, the Debtors and Non-Debtors were operated essentially as one enterprise until the Petition Date when the Debtors were thereafter run separately but nevertheless as one enterprise in themselves. Exponent HR was a service provider of the Debtors during the bankruptcy case and therefore the Trustee asserts that the Parent Companies have no interest in the Credit Refund (all the Non-Debtors other than the Parent Companies are defunct restaurant locations that were abandoned prior to the Petition Date such that they also would have no interest in the Credit Refund).

16. Accordingly, the Trustee and the Parent Companies agree to the relinquishment by Exponent HR of the Credit Refund to the Trustee so that the Credit Refund will become property of the estate. The Trustee and the Parent Companies request the Court include in any order approving this Motion that the Credit Refund is property of the estates and that, in return for payment to the Trustee of the Credit Refund, the Trustee releases any claims of the estates against

Exponent HR except with respect to any defenses to any bankruptcy claim filed by Exponent HR against the Debtors' estates.

**(2)** **Abandonment/Destruction of Office Property and Records**

17. As of about August 1, 2017, the Debtors had sold or closed all restaurant operations. As of the Conversion Date, certain personal property and records of the Debtors were placed into two storage units at 2200 Avenue K, Plano TX 75074 (the "Storage Units").

18. The personal property in storage consists of some office furniture, including a few desks, desk chairs, and filing cabinets, and some uniforms and other clothing and merchandise marked with the Lone Star Steakhouse name (the "Personal Property"). As for records, some records in storage are or may be useful to the Trustee, however, most of the remaining records in the Storage Units are employee records that are not of benefit to the bankruptcy estate and contain personally identifiable information such as social security numbers (the "Records").

19. The office furniture is relatively minimal and appears to be of less value than the cost of sale. Similarly, the other Personal Property is of limited value because it is marked with the Lone Star Steakhouse logo and a sale of such items would cost more than they are worth. Accordingly, the Personal Property is of inconsequential value and a burden to the bankruptcy estates.

20. Aside from some small amount of financial and litigation related records that the Trustee will maintain, the Records are of inconsequential value to the estates and, at least in part, contain sensitive information that should be destroyed.

21. Because of the ownership structure of the Debtors and the Parent Companies, the Parent Companies could arguably claim an interest in the Personal Property and potentially all or a portion of the Records. The Trustee and the Parent Companies have agreed to resolve any

competing claims in the manner set forth herein and the Trustee requests approval of such compromise in accordance with Rule 9019. In addition, pursuant to §554(a) of the Bankruptcy Code, a trustee may abandon any property of the estate that is burdensome to the estate or is of inconsequential value and benefit to the estate. In the opinion of the Trustee, the Personal Property is of no value to the bankruptcy estate. In addition, other than the records identified above that the Trustee will maintain, the Records are of no value to the bankruptcy estate and should be destroyed. Therefore, the Trustee seeks authority to abandon the Personal Property and the Records, and to destroy those records that contain identifying information of individuals.

22. Per the parties' agreement, the Personal Property will be abandoned to the Parent Companies. The destruction of the Records will be overseen by the Parent Companies and the Trustee and will be paid for out of the Remaining Funds that are not included in the Settlement Payment (but which are also not trust funds). The cost of destruction is believed by the Trustee to be a *de minimis* amount and not in excess of $2,500.

## LEGAL BASIS FOR THE RELIEF REQUESTED

23. The Trustee believes the Settlement Agreement is in the best interests of the creditors and the bankruptcy estate. Attached hereto as Exhibit "B" is the affidavit of the Trustee in support of the approval of the Settlement Agreement.

24. Federal Rule of Bankruptcy Procedure 9019(a) provides, in pertinent part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise and settlement."

25. In deciding whether to approve a proposed settlement agreement or compromise, a bankruptcy court should consider the following factors:

    a. the probability of success on the merits and the resolution of the dispute;
    b. the complexity of the litigation being settled;

    c.      the expense, inconvenience and delay associated with litigating the dispute; and

    d.      the paramount interests of creditors.

*Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)* 119 F.3d 349, 356 (5th Cir. 1997); *Connecticut General Life Ins. Co. v. United Companies Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914 (5th Cir. 1995); *Texas Extrusion Corp. v. Lockheed Corp. (In re Texas Extrusion Corp.)*, 844 F.2d 1142, 1158-59 (5th Cir.), cert. denied, 488 U.S. 926 (1988); *U.S. v. Aweco, Inc.,* 752 F.2d 293, 298 (5th Cir.), cert. denied, 469 U.S. 880 (1984).

26.    While it is necessary for the proponent of a compromise to set forth the factual and legal basis for the compromise so the court can make an intelligent and informed evaluation of the proposed settlement, it is not incumbent upon the proponent to present a mini-trial or a full evidentiary hearing. *Texas Extrusion*, 844 F.2d at 1158-59; *Aweco*, 725 F.2d at 298.

27.    Given the potential costs of litigating the Trustee's claims to the Remaining Funds, the finite character of those Remaining Funds, and the increase in claims and the associated cost and expense that would result from consolidation of the Debtors and Non-Debtors as well as the verified fact of accounting for the Remaining Funds that only the Settlement Payment amount are both traceable to the Debtors and not trust funds, the Settlement Agreement is the best resolution that can be obtained to the estates' claims to the Remaining Funds and the Trustee's Motion to Consolidate the Debtors and Non-Debtors. Therefore, the Settlement Agreement is in the best interests of the bankruptcy estate and should be approved. As set forth above, the Credit Refund is from a service provider engaged by the Debtors post-petition such that it is property of the estates and the payment of same to the Trustee should be approved. Also as set forth above, the abandonment of the Personal Property and destruction of the Records is appropriated under Section

554 of the Bankruptcy Code and should also be approved under such authority or under Rule 9019 as a compromise in the best interests of the estates.

WHEREFORE, PREMISES CONSIDERED, the Trustee prays the Court approve the Settlement Agreement attached as Exhibit "A" hereto, authorize the Trustee to undertake any action necessary to consummate the Settlement Agreement, and also approve the additional items described above, and that the Trustee have such other and further relief to which he may be justly entitled.

          Respectfully submitted,

          QUILLING, SELANDER, LOWNDS
            WINSLETT & MOSER, P.C.
          2001 Bryan Street, Suite 1800
          Dallas, Texas 75201
          (214) 871-2100 (Telephone)
          (214) 871-2111 (Facsimile)

By:   */s/ Timothy A. York*
       Timothy A. York
       State Bar No. 24035719

ATTORNEYS FOR THE TRUSTEE

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2018, a true and correct copy of the foregoing Motion was served by electronic transmission via the Court's CM/ECF system upon all parties registered to and receiving electronic service and notice in this bankruptcy case, or otherwise by U.S. regular mail upon those parties not receiving ECF notice as listed on the attached Limited Service List pursuant to the *Order Granting Emergency Motion For Order Limiting Notice And Establishing Additional Notice Procedures* (Docket No. 46).

*Note:  The service list is omitted from service copies to avoid unnecessary copying and postage charges.*

          */s/ Timothy A. York*